ELMORE, Judge.
Respondent-mother appeals from the trial court's order terminating her parental rights to her minor child T.M.B. ("Tim").[1] She contends that the trial court abused its discretion by concluding that termination was in Tim's best interest. We affirm.
I. Background
On 5 February 2015, the Guilford County Department of Health and Human Services ("DHHS") filed a juvenile petition alleging that Tim and his older brother "Todd"[2] were dependent juveniles. The petition chronicled DHHS' history with the family, which began when it received a child protective services report on 30 July 2014 alleging "injurious environment, lack of care and improper supervision." At the time that report was received, Tim and Todd were living with their great-grandmother, and respondent-mother was living in Massachusetts. Respondent-mother had a prior history with the Department of Children and Families in Massachusetts that had led to the boys living with their great-grandmother pursuant to a guardianship in North Carolina. During DHHS' intervention with the family, the great-grandmother informed the investigating social worker she could no longer care for the boys due to their behavioral problems. DHHS obtained nonsecure custody of the children and placed them in a group home.
On 8 April 2015, the trial court conducted an adjudication hearing on the petition. Because respondent-mother's whereabouts were unknown, she had not been served and was not present at the hearing. The trial court entered an order on 6 May 2015 adjudicating Tim a dependent juvenile. On 28 May 2015, the court entered its disposition order. Tim remained in DHHS' custody, DHHS was ordered to continue its efforts to locate respondent-mother, and respondent-mother was ordered to enter into and comply with a case plan once DHHS contacted her.
The disposition order also found that Tim had "struggled since placement" and that, due to Tim's behavioral problems, DHHS was "asked to move [Tim] as quickly as possible." On 18 May 2015, Tim was placed in a different group home, where he continued to have problems. On 18 September 2015, Tim was placed at the Act Together Crisis Center ("Act Together"), and his disruptive behavior continued.
On 5 February 2016, DHHS filed a petition to terminate respondent-mother's parental rights on the grounds of neglect, failure to make reasonable progress, and willful abandonment. See N.C. Gen. Stat. §§ 7B-1111(a)(1), (2), (7) (2015). Soon after, DHHS located respondent-mother, who entered into a case plan on 23 February 2016 requiring her to cooperate with a home study, maintain housing and financial stability, and contact the social worker on a bi-weekly basis. Respondent-mother also had an open case with the Department of Children and Families in Massachusetts regarding some of her other children.
On 26 May 2016, the trial court entered a permanency planning order staying the termination petition for three months. In its order, the court found that Tim had returned to Act Together after his placement in a foster home had been disrupted. On 23 September 2016, the trial court entered another permanency planning order staying the termination petition for another three months. In this order, the court found that Tim had been placed into another foster home and was doing well.
On 3 December 2016, the trial court entered another permanency planning order, finding that respondent-mother was "not making progress on her Massachusetts child welfare case," had not maintained contact with DHHS, and was "not acting in a manner consistent with the health and safety" of Tim. As a result, it lifted the stay of the termination proceedings.
The termination petition was heard on 17 January 2017. At that time, Tim had been placed into another foster home in December 2016 and was doing well. On 8 February 2017, the trial court entered an order terminating respondent-mother's parental rights to Tim based upon each of the grounds alleged by DHHS. The court also concluded that termination would be in Tim's best interest. Respondent-mother entered timely notice of appeal.[3]
II. Analysis
Respondent-mother argues that the trial court erred by concluding that termination was in Tim's best interest. We disagree.
"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2015). "We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "The trial court is subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason." In re D.W.C., J.A.C., 205 N.C. App. 266, 271, 698 S.E.2d 79, 83 (2010).
In deciding whether terminating parental rights is in a juvenile's best interest, the trial court must consider the following criteria and make any relevant findings:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a). In this case, respondent-mother acknowledges that the trial court made findings with respect to each of these statutory factors. However, she challenges the following findings regarding Tim's best interest:
26. ....
b. The likelihood that the juvenile will be adopted is high given his young age.
c. Termination of parental rights will aid in the accomplishment of the juvenile's permanent plan of adoption by making the juvenile legally free for adoption. [DHHS] will also be able to broaden the search for an adoptive home once the juvenile is legally free.
....
g. The juvenile has a right to a safe, permanent home within a reasonable period of time and [Tim] will not be able to attain that without terminating the parental rights of his parents. [Tim] has been in nine different placements, and is in need of permanence. There is no evidence of any possible guardians and [Tim] has expressed a desire to no longer be in foster care.
In her brief, respondent-mother chronicles the behavioral problems that led to Tim's nine different placements and contends that it conflicts with the court's finding that his likelihood of adoption was high. She argues that the trial court's finding was unsupported in light of this Court's decision in In re J.A.O., 166 N.C. App. 222, 601 S.E.2d 226 (2004).
In J.A.O., the juvenile was fourteen years old at the time of the termination proceeding, had severe medical and behavioral disorders, had been in foster care since he was eighteen months old, and had been in nineteen different treatment centers. Id. at 227 -28, 601 S.E.2d at 230. Additionally, the juvenile's guardian ad litem("GAL") argued that it was "highly unlikely that a child of [the juvenile]'s age and physical and mental condition would be a candidate for adoption, much less selected by an adoptive family." Id. at 228, 601 S.E.2d at 230. While recognizing there was a small possibility that the juvenile could be adopted, this Court stated it was "unconvinced that the remote chance of adoption in this case justifies the momentous step of terminating respondent's parental rights." Id. Accordingly, we held that the trial court abused its discretion by concluding that termination of the mother's parental rights was in the juvenile's best interests. Id.
J.A.O. is readily distinguishable. While both cases involve juveniles who repeatedly changed placements due to behavioral issues, the evidence presented here starkly contrasts the evidence presented in J.A.O. Here, there was no evidence presented that Tim's prior behavioral issues would interfere with his future ability to be adopted. The court found that Tim was doing well in his current foster placement. Additionally, when asked about Tim's likelihood of adoption, Tim's GAL testified that "at his age[ ] ... the likelihood is still strong. There are parents that ... set out to just adopt older children." Moreover, in his report that was submitted to the court, the GAL wrote:
[Tim] is a very likable young man. He opens up once he gets to know and feel safe around others. There are some behavior issues, mostly outside of the home, and usually easily controlled. There are many families looking only to adopt older children. The likelihood of being adopted is high.
(Emphasis added.) This evidence from the GAL sufficiently supported the trial court's finding that Tim had a high likelihood of adoption.
Respondent-mother also argues that the trial court's findings are unsupported to the extent that they imply that "terminating Respondent mother's parental rights will expedite Tim's ability to attain a permanent home within a reasonable time." Respondent-mother notes that Tim is now thirteen years old, which requires him to consent to his adoption, see N.C. Gen. Stat. § 48-3-601 (2015), and that he specifically testified at the termination hearing that he did "not really" want to be adopted. However, the court may waive the consent requirement "upon a finding that it is not in the best interest of the minor to require the consent." N.C. Gen. Stat. § 48-3-603(b)(2) (2015). Thus, even assuming Tim's wishes, as expressed at the termination hearing, remained constant by the time of an adoption, his lack of consent would not preclude him from being adopted.
Respondent-mother also argues that the trial court's finding that termination will aid in accomplishing the permanent plan is unsupported because "[t]erminating the parental rights of a child's parent does not guarantee that a child will be adopted, any more than quitting one's job guarantees the person will obtain another job." In support of this argument, she cites the number of children available on an adoption website as well as 2012 adoption statistics and claims these sources prove Tim is unlikely to be adopted given his age and past history. But because this information was neither presented to the trial court nor part of the record on appeal, we will not consider it. See West v. G.D. Reddick, Inc., 48 N.C. App. 135, 137, 268 S.E.2d 235, 236 (1980), rev'd on other grounds, 302 N.C. 201, 274 S.E.2d 221 (1981) ("The Court of Appeals can judicially know only what appears of record .... Matters discussed in a brief but not found in the record will not be considered by this Court. It is incumbent upon the appellant to see that the record is properly made up and transmitted to the appellate court." (internal citation omitted)).
Tim's social worker specifically testified as to how termination of his parents' rights would aid his ability to be adopted. She acknowledged that, as a foster care social worker, she did not have the same access to adoption databases as social workers specializing in adoption, and stated that Tim would need to be available for adoption in order to begin the adoption process. The GAL's report agreed with this assessment: "The TPR will free [Tim] for adoption and enable the search for a forever family. The earlier the search starts, the better the chance of adoption." This evidence supports the trial court's finding that termination would aid in accomplishing Tim's permanent plan.
III. Conclusion
The trial court made each of the findings required by N.C. Gen. Stat. § 7B-1110, and each finding was supported by competent evidence. The trial court clearly considered these statutory factors in reaching its conclusion that termination was in Tim's best interest, and we discern no abuse of discretion in the court's conclusion. Accordingly, we affirm the trial court's order terminating respondent-mother's parental rights to Tim.
AFFIRMED.
Report per Rule 30(e).
Judges BERGER and ARROWOOD concur.

The parties have stipulated to this pseudonym for the minor child pursuant to N.C. R. App. P. 3.1(b).

A pseudonym.

The trial court's order also terminated the rights of Tim's putative fathers, who did not appeal.